AO 91 (Rev. 11/11) Criminal Complaint

US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED
APR - 3 2019
DOUGLAS F. YOUNG, Clerk
By _____ Deputy Clerk

# UNITED STATES DISTRICT COURT
for the
Western District of Arkansas
Fort Smith Division

United States of America )
v. ) Case No. 2:19-mj-2009-001
Ryan Miller )
_____ )
*Defendant* )

## CRIMINAL COMPLAINT

I, the Complainant in this case, state that the following is true to the best of my knowledge and belief.

Beginning as early as January 2018 and continuing to the present, in the county of Crawford, in the Western District of Arkansas, the Defendant, RYAN MILLER, violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), and 846 | Conspiracy to possess with intent to distribute more than 50 grams of actual methamphetamine |

This criminal complaint is based on these facts:

■ Continued on the attached sheet.

_____
*Complainant's Signature*

Joseph Deer, DEA Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4/3/19

_____
*Judge's signature*

City and State: Fort Smith, Arkansas

Mark E. Ford, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT

Being duly sworn, I, Joseph Deer, do here by depose and state:

I, Joseph Deer, am a Detective with the Greenwood Police Department and I am currently assigned as a Task Force Officer (TFO) to the Drug Enforcement Administration (DEA). I have been so appointed since March of 2018. Prior to being appointed as a Task Force Officer, I have been employed as a Detective with Greenwood Police Department for approximately 4 years. Prior to my employment with Greenwood Police Department, I was employed with the Scott County Sheriff's Department for approximately 9 years as a Deputy Sheriff. During my employment, I have personally conducted or assisted in numerous investigations of criminal violations of the Controlled Substances Act and federal drug trafficking statutes. Many of these investigations have also focused on organizations which have distributed, manufactured, or derived income from illegal sources, specifically from the unlawful distribution of methamphetamine, marijuana, and other controlled substances. I have participated in numerous investigations into the unlawful importation, possession with intent to distribute, and distribution of controlled substances. I have participated in all aspects of drug investigations, including physical surveillance, execution of search warrants, undercover transactions, Court ordered wiretaps, analysis of phone and financial records, and arrests of numerous drug traffickers. I have been the Affiant on several other search warrants. I have debriefed numerous defendants, confidential informants, and other witnesses having extensive knowledge of the inner workings of major narcotics trafficking organizations, including those operating internationally. I have also spoken on numerous occasions with other experienced narcotics investigators, concerning the methods and practices of drug traffickers and money launderers. Furthermore, I have attended training courses specializing in the investigation of narcotics trafficking.

Through these investigations, my training and experience, and conversations with other law enforcement personnel, I have become familiar with the methods used by drug traffickers, both domestic and international, to obtain, manufacture, import, smuggle, safeguard, and distribute narcotics, to make drug payments, collect and launder trafficking-derived proceeds and communicate with organizational members. I am further aware of the methods employed by major drug trafficking organizations to thwart any investigation of their illegal activities. My training and experience as a law enforcement officer, and my conversations with state, federal, and law enforcement officers in other countries form the basis of the opinions and conclusions set forth below.

This Affidavit is being submitted for the limited purpose to establish probable cause for the arrest of Ryan MILLER, for conspiracy to distribute more than 50 grams of actual methamphetamine, a Schedule II controlled substance, in violation of Title 21, United State Code Sections 841(a)(1), 841(b)(1)(A)(viii) and 846, in the Western District of Arkansas, therefore I have not included each and every fact known to me concerning this investigation.

1. The Cory PHILLIPS Drug Trafficking Organization (DTO) has been in operation in the Western District of Arkansas for the past five years. Credible and reliable information has revealed that the DTO distributes multi-pound quantities of methamphetamine on a weekly basis. The investigation has revealed that Russell HOFER, Tamika PHILLIPS, Ryan MILLER, Chris MURPHY, Megan CASEY, Derrick MUNHOLLOND, and Quan PHUNG are confirmed and active members of the PHILLPS DTO.

2. From June 2018 to the present, DEA Agents have been investigating the PHILLIPS DTO. Through confidential source (CS) interviews, CS controlled purchases, telephone toll analysis, search warrants and both physical and electronic surveillance, Agents have

determined that Cory PHILLIPS is the head of the PHILLIPS DTO and he currently resides in Uniontown, Crawford County, Arkansas in the Western District of Arkansas. Cory PHILLIPS is originally from Crawford County, Arkansas and utilizes close associates that he trusts in order to distribute large quantities of methamphetamine in the Crawford and Sebastian County area, as well as in the Eastern District of Oklahoma.

3. Law enforcement agencies have conducted post arrest interviews with low-level members of the PHILLIPS DTO. During these interviews, the individuals have identified HOFER, MILLER, MURPHY, CASEY, MUNHOLLOND, and PHUNG as bulk methamphetamine dealers in Western Arkansas who are being supplied by Cory PHILLIPS. These individuals have further confirmed that the co-conspirators, working at the direction of Cory PHILLIPS, have distributed multiple pounds of methamphetamine in the Western District of Arkansas and Eastern District of Oklahoma.

4. Through CS controlled purchases, physical and electronic surveillance, Agents have determined multi-pound quantities of methamphetamine are delivered by vehicle to leaders in the PHILLIPS DTO. The deliveries are orchestrated by Cory PHILLIPS but Cory PHILLIPS does not physically make contact with the methamphetamine. Leaders in the DTO, such as HOFER, MILLER, MURPHY, MUNHOLLOND, and PHUNG receive pound quantities as directed by Cory PHILLIPS. These leaders in the DTO break the methamphetamine down into ounce quantities, which are then delivered to local dealers by personal vehicles for distribution to street level consumers. The proceeds from the sale of methamphetamine is directed back to Cory PHILLIPS.

5. Of particular importance is a confidential source (CS) developed in June of 2018. Information provided by the CS has been verified through text messages, toll analysis and

surveillance. The CS advised that methamphetamine is obtained from two sources: Cory PHILLIPS and HOFER. The CS said that HOFER was supplied by Cory PHILLIPS. The CS advised that the CS has been part of the DTO since approximately September of 2017. The CS reported HOFER and the CS would obtain approximately one pound of methamphetamine per day from Cory PHILLIPS, which was in turn sold. The CS advised that all profits from the sale of methamphetamine were directed back to Cory PHILLIPS. The CS stated that Cory PHILLIPS obtains approximately 30 pounds of methamphetamine at a time. The CS advised Cory PHILLIPS has individuals involved in the DTO store the methamphetamine at their residences, thus negating Cory PHILLIPS' risk of being caught with the methamphetamine. The CS stated Cory PHILLIPS arranged the delivery of the methamphetamine to individuals in the DTO but Cory PHILLIPS would not deliver methamphetamine personally. Cory PHILLIPS urged individuals in the DTO to sell at least one pound per day, as the CS and HOFER did from approximately September 2017 through June 2018. The CS confirmed that Cory PHILLIPS communicates with the CS, HOFER, MILLER, MURPHY, CASEY, MUNHOLLOND and PHUNG regarding the distribution of methamphetamine via cell phones.

6. On August 22, 2018, during a traffic stop of MILLER, $4,820 United States currency and a ledger that had names and money amounts next to the names indicating drug transactions, was located in MILLER'S vehicle. After the traffic stop, a parole search was conducted at MILLER and Megan CASEY's apartment in Fort Smith. At the apartment, a safe was located in the bedroom closet and the key to that safe was on MILLER's key ring. Located inside the safe was a plastic bag containing 585.9 grams of methamphetamine. The

methamphetamine was sent to the DEA Southeast Laboratory where it was determined to be 574 grams of actual methamphetamine.

7. On August 25, 2018, a post arrest and post *Miranda* interview was conducted with a cooperating defendant. The cooperating defendant advised he/she had been selling methamphetamine to make money for a living. The cooperating defendant admitted the approximately 23 ounces of methamphetamine he/she was arrested with belonged to him/her and that he/she obtained the methamphetamine from MILLER. The cooperating defendant advised that on August 24, 2018, the cooperating defendant followed CASEY to MILLER'S father's house in Pocola, Oklahoma. The cooperating defendant was handed two pounds of methamphetamine by an unidentified male subject inside the residence. The cooperating defendant stated that CASEY was then supposed to follow him/her but the cooperating defendant sped away. The cooperating defendant stated that he/she paid CASEY $500 on August 23, 2018 for money owed to MILLER for previous fronts of methamphetamine and the two pounds of methamphetamine. The cooperating defendant stated that CASEY was attempting to gather money up owed to MILLER in order to get MILLER out of jail. The cooperating defendant stated that the only person that knew where MILLER stored his methamphetamine was CASEY. On August 24, 2018, the cooperating defendant advised that CASEY came to his/her residence and asked him/her if he/she needed another pound. The cooperating defendant advised CASEY that he/she had not sold all of the other two pounds and did not need another pound. The cooperating defendant stated that he/she owed MILLER $14,500 for being fronted methamphetamine. The cooperating defendant stated that he/she owed $12,000 for the two pounds that was fronted to him/her on August 24, 2018 and the other $2,500 for methamphetamine was previously

fronted. The cooperating defendant advised that Cory PHILLIPS controlled the operation. The cooperating defendant advised that MILLER always fronted him/her the methamphetamine and he/she always paid MILLER back the money he/she owed him. The cooperating defendant stated that MILLER'S source of supply was Cory PHILLIPS. The cooperating defendant stated that he/she knew this because the night MILLER was arrested CASEY came asking for money and CASEY told him/her that CASEY would have to give some of the money to PHILLIPS.

8. Based upon the above and my training and experience, Affiant believes there is probable cause to believe Ryan MILLER conspired with others to distribute more than 50 grams of actual methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United State Code, Sections 841(a)(1), 841(b)(1)(A)(viii) and 846, in the Western District of Arkansas.

DATED this __3__ day of April, 2019.

_____
Joseph Deer
Drug Enforcement Administration
Task Force Officer

Affidavit subscribed and sworn to before me this __3d__ day of April, 2019.

_____
Honorable Mark E. Ford
United States Magistrate Judge